(59 South. 110.)

No. 19,092.

POLICE JURY OF IBERIA PARISH v. HENDERSON, Sheriff.

(May 6, 1912. Rehearing Denied June 29, 1912.)

*(Syllabus by the Court.)*

1. STATUTES (§ 125*)—SUBJECTS AND TITLES —EXPRESSION OF SUBJECT IN TITLE—FEES OF OFFICERS.

According to its title, Act No. 203 of 1898 purports to be an act regulating, fixing, and providing for the collection of the fees and compensation of sheriffs, clerks, recorders, justices of the peace, constables, and coroners "in civil matters," and "fixing" the fees of sheriffs "in criminal matters"; and, there being no intimation of any purpose to deal with the question of the collection of the fees of sheriffs in criminal matters, the provisions on that subject in the body of the act are broader than, and unwarranted by, the title, and in that respect the act contravenes so much of article 31 of the Constitution as provides that all laws shall express their objects in their titles.

[Ed. Note.—For other cases, see Statutes, Cent. Dig. §§ 187–191; Dec. Dig. § 125.*]

2. SHERIFFS AND CONSTABLES (§ 71*)—LIABILITIES—COLLECTIONS.

The provision of Act No. 203 of 1898, purporting to authorize sheriffs to retain from their monthly settlements of moneys collected by them for their respective parishes the amounts of their approved bills, being unconstitutional, the police jury of a parish is entitled to judgment against the sheriff for any amount so retained.

[Ed. Note.—For other cases, see Sheriffs and Constables, Cent. Dig. § 98; Dec. Dig. § 71.*]

3. COURTS (§ 224*)—APPELLATE JURISDICTION —AMOUNT IN CONTROVERSY.

In a suit by a police jury for the recovery of an amount of money in excess of $2,000 alleged to have been unlawfully retained by the sheriff in payment of his bills against the parish, the fact that the statute upon which the sheriff relies is held by the district court to be constitutional does not affect the appellate jurisdiction of this court, which is determined by the amount in dispute.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 487, 608, 609, 614, 616, 617; Dec. Dig. § 224.*]

Appeal from Nineteenth Judicial District Court, Parish of Iberia; Charles A. O'Neill, Judge ad hoc.

Action by the Police Jury of Iberia Parish against George Henderson, Sheriff of Iberia Parish. Judgment for defendant, and plaintiff appeals. Reversed, and judgment rendered for plaintiff.

Weeks & Weeks, for appellant. Burke & Burke and Ventress J. Smith, for appellee.

### Statement of the Case.

MONROE, J. The police jury is here suing to recover from the sheriff a balance of $7,235.98 alleged to be due for taxes and other moneys collected for account of the parish. It alleges that Act No. 203 of 1898, under the authority of which the sheriff assumes to retain said moneys, is unconstitutional, in that its title and context embrace more than one object, and that the context is broader than the title. It further alleges that, if said act be construed to authorize judges to approve the bills and claims of the sheriff for salary, commissions, etc., it contravenes article 96 of the Constitution, in that it confers powers which are nonjudicial.

Defendant, for answer, alleges, in substance, that he has been governed by Act No. 203 of 1898, the constitutionality of which he affirms. He admits that he has paid himself a number of bills due him by the parish, upon the approval of the judge of the district court, as provided for in said act, and he annexes the bills to his answer. He alleges that the bills are correct, and were due him when he deducted the amounts thereof from the tax collections, and that, if he had depended on plaintiff for its approval and payment, plaintiff would have refused, "through captiousness or otherwise," to recognize their correctness, and, should any of the bills have met with its approval, would, by reason at times of not having funds on hand, or, though funds were on hand, of the issuance of script or duebills, have relegated him to the position of an ordinary creditor of the parish. He further alleges that even, for the issuance to him of illegal and unavailable script the police jury under-

took to require him to have his bills approved by the clerk of the court, and that its ordinance to that effect was illegal, and was intended to harass him and prevent him from making his settlements without demeaning himself by subjecting his bills to the scrutiny of an officer who had no jurisdiction with regard to them. Assuming the character of plaintiff in reconvention, he alleges that under the law he is entitled to charge at the rate of 5 cents per mile for each prisoner conveyed to the penitentiary and 10 cents per mile for himself, going and returning, and that, by error, he has undercharged the parish on that account to the extent of $198.60, for which he prays judgment.

There are 59 bills filed with the answer, which may be grouped as follows:

| | | |
|---|---:|---:|
| 11 for feeding prisoners............ | $4,327 | 50 |
| 5 for transportation of prisoners and insane ...................... | 608 | 25 |
| 7 for salary 9 months............. | 916 | 75 |
| 12 for arrests in other parishes..... | 123 | 20 |
| 7 for attending district and circuit courts ...................... | 455 | 00 |
| 17 for miscellaneous charges jail and courthouse supplies and repairs, etc. | 361 | 73 |
| | $6,792 | 43 |

The following admission appears of record, to wit:

"It is admitted by all parties that the sheriff up to June, 1909, was for a number of years working with the parish under a contract for $6,500 annually, which was in full remuneration and payment for all services due him by the parish, and that those payments were made in quarterly settlements by arrangement with the police jury, and that there is nothing due him prior to that date; * * * that, had the sheriff from time to time since June 1, 1909, presented bills to the police jury for services rendered during the preceding months, and requested immediate payment of the same, the police jury would have declined, stating, as the ground for their refusal, that it would pay same after the collection of the taxes, budgeted and levied to meet the expenses of that year; that in the meantime it would have tendered him for such bills as they might approve as due a duebill against the criminal funds he might accept or reject, at pleasure; * * * that even this would not have been done without the sheriff complying with the ordinance

of date 3/4/09, which ordinance is now introduced in evidence, marked 'A.' It is admitted that by ordinance of the police jury the sheriff was entitled to 50 cents for feeding each prisoner per day; * * * that the floating indebtedness of the parish was on June 1, 1909, approximately $20,000, dating back a number of years; that this indebtedness will be reduced from the tax collections on the tax roll of 1910 approximately more than 50 per cent.; * * * that the amounts retained by the sheriff for the bills annexed to the answer were from tax collections made from the tax rolls of 1909 and from licenses collected in 1910.

"A. B. Romero, sworn, says: 'I am parish treasurer and secretary of the police jury, and have been since 1906. The police jury on one occasion, either in 1908 or 1909, disregarded its budget by authorizing me to pay funds due by one account with funds belonging to another account, and frequently duebills against a fund cannot be paid, and have to be carried over to future years. This applies to the budget of the criminal funds as well as to other funds. During each of the years 1908, 1909, and 1911, there was budgeted and collected for account of the criminal funds an amount more than sufficient to cover all criminal expenses, including the bills of the sheriff, and those funds were applied to other purposes as well, making a deficit, thereby, in the criminal fund. I consider that the floating indebtedness of the parish arose from the fact of the police jury disregarding its budget from year to year, as above stated, because, if the police jury had confined itself to its budget, there necessarily could not have been any indebtedness remaining from the other years. Most of the floating debt of the parish was incurred by the present police jury.'

"It is admitted that the various items appearing on the various bills annexed to defendant's answer are what they purport to be, plaintiff putting at issue only the legality of the same, and not the character or verity of the same. The correctness of the charges as to amounts or bases, however, is not admitted.

"It is admitted that the Colorado Southern Railroad Company was open for public passenger transportation between Opelousas and Baton Rouge by rail on the 1st day of September, 1909, and that the Southern Pacific was in operation long prior to the year 1908 between New Iberia and Opelousas, and that both roads were in operation; * * * that the distance between New Iberia and Opelousas is 41 miles, via the Southern Pacific Railroad, and the distance between Opelousas and Baton Rouge, via the Colorado Southern, is 60 miles; * * * that prior to the completion of the New Iberia & Northern Railroad April 1, 1910, which road connects with the Colorado Southern at Port Barre, all prisoners were transferred via New Orleans, and that this was the only route followed by the sheriff of Iberia parish and his predecessors. It is admitted that during a period of time between the 1st

of June, 1909, and the meeting of the police jury in August, 1909, the question as to whether the sheriff should continue working under the contract which existed for the past years or should work under the fee bill had not been terminated, the police jury having at its June meeting renewed the contract, and the sheriff subsequently—that is, at the August meeting—absolving them from the same, with their consent, this being retroactive to June 1, 1909; * * * that at the September meeting of the police jury, the sheriff and the police jury not agreeing, the sheriff notified it that he would have his bills approved by the district judge and pay his bill by retaining collections made from the parish as hereinbefore admitted, basing his position on Act No. 203 of 1898; * * * that the bills with the approval of the district judge, marked 1 to 59, inclusive, are the only ones paid to himself by the sheriff out of the funds hereinbefore mentioned and in contest in this litigation; * * * that the signature of James Simon, judge, approving the bills, and the date of approval, are genuine and correct."

There was judgment in the district court in favor of defendant, and plaintiff has appealed.

### Opinion—On Motion to Dismiss Appeal.

[3] Appellee moves to dismiss the appeal on the ground that this court is without jurisdiction ratione materiæ; the theory propounded being, in effect, as we understand it, that the statute, the constitutionality of which has been put at issue, having been maintained by the judge a quo, jurisdiction of the appeal depends on the amount in dispute, and that, as plaintiff did not undertake on the trial of the case to furnish any evidence putting at issue the correctness of the sheriff's bills, with the exception of a few minor items, such as railroad mileage, "aggregating an insignificant sum," there is only an insignificant sum in dispute.

The dispute is in regard to the right of the defendant to appropriate money collected by him for account of the parish to the payment of his claims against the parish, and the amount involved in that dispute is the amount conceded by both litigants to have been so appropriated, which amount exceeds $2,000.

The motion to dismiss is therefore overruled.

### On the Merits.

[1] The title of the act (No. 203 of 1898) upon which defendant relies reads as follows:

"An act to provide a general fee bill or bill of costs regulating and fixing the fees and compensation allowed sheriffs, clerks and recorders, justices of the peace, constables and coroners, in all civil matters, and to provide for the collection of the same throughout the state of Louisiana, the parish of Orleans excepted, as required by article 129 of the Constitution of 1898, and fixing the fees and compensation of sheriffs throughout the state, the parish of Orleans excepted, in criminal matters."

It will be noted that, according to the title, the act provides for the "regulating and fixing of the fees and compensation" of six, named officers, "in all civil matters, and * * * for the collection thereof," and it purports further to provide for "fixing the fees and compensation" of one of the six officers so named "in criminal matters." "Whilst therefore, one would expect to find in the body of the act provisions for the collection, as well as for the fixing of the fees of the six officers in civil matters, one would not expect to find anything more in regard to the fees and compensation of the sheriffs in criminal matters than provisions "fixing" the fees, since that is all that, according to its title, the act should contain on that subject. The act is, however, disappointing in that respect. Act No. 170 of 1898 provides that the collector of parish taxes and licenses shall make his settlements with the parish treasurer during the first week in each month, and shall then pay over to the treasurer the money collected during the preceding month, shall make final settlements with the police juries within 10 days after July 20th of each year, and shall make sworn statements that he has thus accounted for all taxes collected by him, and for failure to comply with these requirements

he is liable to removal from office, forfeiture of his commissions, heavy interest charges, and criminal prosecution. See Act No. 170 of 1898, §§ 77, 78, et seq., pp. 379, 380.

Act No. 203 of 1898 (approved on the same day as Act No. 170), after "fixing" certain fees and charges to be paid sheriffs in criminal matters, provides that:

"The sheriffs shall be allowed to retain, from their monthly settlements of moneys collected by them for the parish, their approved bills as herein provided."

Act No. 16 of 1884 amends and re-enacts section 1042 of the Revised Statutes, and reads:

"All expenses incurred in the different parishes of the state, and in the city of New Orleans, by the arrest, confinement, maintenance and prosecution of persons accused or convicted of crimes, their removal to prison, the pay of witnesses, jurors and all expenses whatever attending criminal proceedings, shall be paid by the respective parishes in which the offense charged may have been committed, or by the city of New Orleans, as the case may be; such expenses shall be paid by the parish treasurer, or by the city treasurer, as the case may be, after an account thereof shall be duly certified by the clerk of court and the presiding judge thereof."

Act No. 203 of 1898 provides that the bills of the sheriff for his fees in criminal matters shall be paid by the parish upon the "approval of the district judge or police jury"; but, as the act of 1884 relates exclusively to the collection of such fees, and the title of the act of 1898 relates exclusively (in so far as it refers to criminal matters at all) to the fixing of such fees, and contains no intimation that its object is also to provide for their collection, it follows that the act of 1884 is unaffected by the repealing clause in the act of 1898, referring to laws upon the same subject-matter.

Without pursuing the subject in further detail, our conclusion is that the provisions of Act No. 203 of 1898, relating to the collection of the fees of the sheriffs in criminal matters, constitute the particular kind of legislation to which the requirement that the object of every law shall be expressed in its title should be applied, since, with no other intimation in the title, as to the fees of the sheriffs in criminal matters than that the object of the act is to fix them—i. e., determine the amount—those provisions purport to establish a method of collecting them such as had never before been known, a method which would dispense the sheriffs from accounting for public moneys collected by them, as required by all prior, and all existing, laws, would give them a preference with respect to the payment of their claims over all other creditors of their parishes, would so change a well-settled rule of law as to enable them to apply funds coming into their hands as fiduciaries to the payment of ordinary debts, due to themselves, would, in a measure, take the control of the finances of the parishes out of the hands of the police juries and parish treasurers, would impose upon the judges of the district courts an additional burden of responsibility which would appear properly to belong to the officers of the executive department of the government, and would effect other changes and accomplish other results, concerning which the title conveys no information, save, by negation, that no such provisions are in the act.

[2] The conclusion thus reached is sufficient for the purposes of this case, and we deem it unnecessary and unadvisable at this time to pass upon the other constitutional questions which have been presented.

Holding, therefore, that, in so far as Act No. 203 of 1898 deals with the question of the collection of the fees and compensation of the sheriffs in criminal matters, it is broader than its title, and, to that extent, in contravention of the Constitution, and hence that the defendant is withholding the amount here shown to have been collected by him for account of the parish of Iberia without warrant of law:

It is ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment in favor of plaintiff and against said defendant in the sum of $6,792.43, together with the costs in both courts, the rights of the defendant with respect to his bills, hereinabove referred to, being fully reserved.